IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | Case No. 1:18-cr-387 |
| ) | Hon. Liam O'Grady |
| CHARLOTTE WUBONGNE GHAM, ) | |
| ) | |
| *Defendant.* ) | |
| ) | |

AUG 1 4 2019

## MEMORANDUM OPINION

This matter comes before the Court on Defendant's Motion in Limine to Present the Affirmative Defense of Justification at Trial and Motion to Dismiss the Superseding Indictment Due to the Government's Failure to Preserve Evidence. The motions were fully briefed, and the Court held an evidentiary hearing on April 15, 2019. The Court denied the motions from the bench and in a subsequent Order issued the same day. This memorandum opinion follows to more fully explain the Court's decisions.

### A. Background.

Defendant Charlotte Gham is a Cameroonian anglophone who lived in a region of Cameroon where violence against anglophones, including by the francophone government, is common. Defendant's sister lives in the United States and frequently criticizes the Cameroonian government on social media and radio shows. In May 2018, heavily armed Cameroonian officials approached Defendant, summoned her to the police station, and ordered her to make her sister refrain from further anti-government commentary. Defendant pled with her sister to stop out of fear that she would otherwise face violence from the government, but her sister did not listen to Defendant's pleas. The same Cameroonian officials again interrogated Defendant three weeks later.

On or about June 13, 2018, Defendant was warned by her neighbor that Cameroonian officials had come to her house searching for her. Fearing for her safety, Defendant fled to a nearby city the next day. A few days later, her new residence was ransacked. Defendant also began receiving anonymous phone calls, which she believed indicated that she was being tracked by the Cameroonian police. Defendant then fled to Ghana to meet her sister, hoping to find safety from the Cameroonian police in another country.

While in Ghana, Defendant continued to receive anonymous phone calls and continued to fear for her safety. She therefore decided to flee to the United States. She called her aunt in the United Kingdom to buy her a plane ticket and stole her sister's United States passport and driver's license before going to the airport. Defendant no longer had her own Cameroonian identification documents and chose not to apply for a United States visa because she had previously been denied a visa after a long waiting process.

When Defendant arrived at the Washington Dulles International Airport, Defendant gave her sister's travel documents and a customs declaration listing her sister's information as her own to the customs officer in the line for United States citizens. The customs officer suspected that Defendant was not the person on her sister's passport and sent Defendant to a secondary inspection station. At the secondary inspection station, Defendant again gave an immigration officer her sister's passport as if it were her own and was unable to answer many of the follow-up questions she was asked. The immigration officer accused Defendant of pretending to be someone she was not, and Defendant then admitted that she had knowingly and willingly used her sister's passport to enter the United States. Defendant explained that she came to the United States for protection because she was running from the war and wanted a better life, but never mentioned being presently afraid. Defendant's answers during the secondary inspection station

interview, including her confession to knowingly using her sister's passport to enter the United States, were recorded in a "Record of Sworn Statement in Administrative Proceedings," which Defendant signed as a true and correct record of her answers during the interview.

Following the interview, Defendant was arrested and was subsequently charged and indicted for Misuse of a Passport.

Defendant has filed a motion in limine to present the affirmative defense of justification at trial. Defendant has also moved to dismiss the superseding indictment due to the government's failure to preserve evidence. The Court held an evidentiary hearing on both motions on April 15, 2019, and denied both motions for the reasons stated from the bench, the reasons stated below, and for good cause shown.

### B. Defendant's Motion in Limine to Present the Affirmative Defense of Justification at Trial.

To present the justification defense at trial, a defendant must make a *prima facie* showing in an *in limine* hearing that: (1) the defendant was under unlawful and present threat of death or serious bodily injury, (2) the defendant did not recklessly place herself in a situation where she would be forced to engage in criminal conduct, (3) the defendant had no reasonable legal alternative, and (4) there was a direct causal relationship between the criminal act and the avoidance of the threatened harm. *United States v. Crittendon*, 883 F.2d 326, 330 (4th Cir. 1989). Even accepting Defendant's testimony at the evidentiary hearing as true, Defendant failed to establish the first, third, and fourth prongs of the justification defense.

Defendant failed to establish the first prong – the existence of a present and imminent threat – because even if Defendant remained in imminent threat while she was in Ghana, that threat was no longer present at the time she handed her sister's passport to the customs agent at the United States airport. *United States v. Simo*, 68 F. Supp. 2d 706, 710–11 (E.D. Va. 1999)

(Ellis, J.) ("Although defendant here may be able to show a reasonable fear for her physical safety were she to return to Cameroon, this threat was not imminent at the time of the offense; instead it was, at most, a threat of harm in the future. . . . [T]he political situation in Cameroon and Germany posed no threat to defendant as she handed the false passport to a United States customs official.").

Defendant failed to establish the third prong – lack of a reasonable legal alternative – because Defendant could have (a) gone to another country besides the United States or the countries in close proximity to Cameroon, where she claims the threat would have remained present, or (b) asked the custom agent for asylum rather than handing him her sister's passport as her own. *Id.* at 711; *see also United States v. Lebreault-Feliz*, 807 F.3d 1, 5 (1st Cir. 2015) ("[T]he lack-of-reasonable-alternatives requirement generally cannot be satisfied once the 'defendant has reached a position where he can safely turn himself in to [or call on] the authorities.'" (quoting *United States v. Contento-Pachon*, 723 F.2d 691, 695 (9th Cir. 1984)) (alteration in original)); *United States v. Fashola*, 1995 U.S. App. LEXIS 32582, at *5 (4th Cir. Nov. 20, 1995) (finding that the defendant failed to establish lack of a reasonable legal alternative because "he has not presented any evidence, other than that his brother provided him with a United States visa and that he had former ties to this country, as to why he could not have fled to another country").

Similarly, Defendant failed to establish the fourth prong – a causal relationship between the threat and the criminal action – because she failed to establish that she "was in immediate danger of death unless [s]he entered *the United States*," as she "could have avoided the imminent threat of death by entering another country" not in close proximity to Cameroon. *Id.* at *6 (emphasis added).

Because Defendant failed to establish three of the four prongs of the justification defense, the Court denied Defendant's Motion in Limine to Present the Affirmative Defense of Justification at Trial.

### C. Defendant's Motion to Dismiss the Superseding Indictment Due to the Government's Failure to Preserve Evidence.

Defendant also argued the superseding indictment should be dismissed because the government failed to retain video evidence of Defendant's arrival at United States Customs and the officers who encountered Defendant at the airport failed to mention that Defendant explained in detail that she came to the United States because she feared for her safety in Cameroon.

Under *Arizona v. Youngblood*, "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." 488 U.S. 51, 58 (1988). Defendant argued the missing video evidence was "potentially useful" because it would help her establish the first two prongs of the justification defense by showing, respectively, Defendant's fearful physical demeanor and Defendant's attempts to seek assistance before being funneled into the general customs line. Even assuming *arguendo* that the video evidence would have been "potentially useful," Defendant failed to demonstrate that the government acted in bad faith.

"The presence or absence of bad faith by the police for purposes of the Due Process Clause must necessarily turn on the police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed." *Id.* at 56 n.*. In *United States v. Zaragoza-Moreira*, cited by Defendant, the Ninth Circuit found that the government acted in bad faith in failing to preserve evidence of the defendant proceeding through customs because the transcript of the defendant's immigration interview reflected that the defendant had repeatedly alerted the interviewing officer to a potential duress claim, and therefore the interviewing officer had knowledge of the

potentially exculpatory value of the customs video before it was destroyed. 780 F.3d 971, 978–79 (2015). By contrast, the interview transcript in this case does not reflect that Defendant alerted the government to her possible justification defense. Further, unlike in *Zaragoza-Moreira*, in this case the government promptly acted on Defendant's request to see the video surveillance. Unfortunately, by that time the video surveillance had already been overwritten in the normal course of business by the Metro Washington Airport Authorities, which owns and controls the cameras in the Dulles Airport immigration inspection areas. The record therefore does not reflect that the government was on notice of the potential exculpatory nature of the customs video or that it acted in bad faith in failing to preserve it.

The record also does not reflect that the government acted in bad faith in documenting Defendant's interview at the secondary inspection area. Defendant has argued that she alerted her interviewers to a possible justification defense and that the government acted in bad faith in not recording her statements. Yet, Defendant read the transcript of her interview and swore by signature that the transcript included "a full, true, and correct record" of her answers during the interview. As a result, the Court found Defendant's arguments that the interview transcript was inaccurate or incomplete uncompelling.

Because Defendant failed to show that the government acted in bad faith as required under *Youngblood*, the Court denied Defendant's Motion to Dismiss the Superseding Indictment Due to the Government's Failure to Preserve Evidence.

August 14 2019  
Alexandria, Virginia

Liam O'Grady  
United States District Judge